3-24-0-1-3-4 Daniel Scandiff, Appellant v. Elizabeth Scandiff, Appallee Good morning, David Thollander, on behalf of the Appellant, Daniel Scandiff Sr. Good morning, John Polinski, PCOLINSKI, on behalf of Elizabeth Scandiff. You may proceed, Mr. Thollander. If it may please the court, for the record, my name is David Thollander. I represent the plaintiff, Daniel Scandiff Sr. And the matter that was brought against his now former daughter-in-law, Elizabeth Scandiff, as a result of a series of statements that the defendant, Appallee, made to her mother and her two brothers, Daniel Gago, the mother being Stella Gago, Daniel Gago, and John Gago. The real issue before the court is a simple one. Whether or not statements made to Stella Gago, Daniel Gago, and Robert Gago were publications within the definition or meaning of defamation. The matter proceeded to trial, and there were roughly seven witnesses that gave testimony. At the conclusion of Plaintiff's Case-in-Chief, the defendant, Appallee, moved for a directed finding. Judge Cerny indicated, Neal Cerny, granted that motion, finding that the statements made to DCFS, the DuPage County State's Attorney's Office, the DuPage County investigators, DCFS investigators, and the Ville Park Police Department were privileged. The court went on to say that it found that those statements to those agencies and entities were not publications. The problem, however, is that plaintiff did not sue Elizabeth Scandiff based upon statements made to DCFS, its investigators, DuPage County State's Attorney's Office, or the Ville Park Police Department. The action arose from statements that the defendant made to mom and her two brothers. And when the court rendered its decision, I asked whether or not the court is ruling or deciding on whether the statements made to mom and the brothers were defamatory. And the court indicated it found that the statements were not publications. Respectfully, that's simply erroneous. As defined in case law, as well as the restatement seconded to the courts, any utterance, any utterance is a publication. It is beyond dispute that the defendant told her mother that my client got in the bathtub naked with his four-year-old grandson and then proceeded to stick, according to the defendant, a flashlight up his anus. That did not occur. She testified that she told her mother that claim, and her mother verified at trial that she was told, quote, what little Danny had said. Now, defendant's defense, recorded defense, is really twofold, that the defendant didn't really believe these statements. That's not an element of defamation. Whether she believes it or not is irrelevant. She made the statement. Any utterance is a publication. Defendant also maintains that, well, she was just repeating what little Danny, a four-year-old, told her. Well, as the appellate court has ruled, and it's defined in Illinois law, that repeating an utterance isn't self-defamatory. And the appellate court indicated, I believe it out of the First District, that the faithful retelling of the utterance is actually more damning. And so the mere fact that the defendant is repeating allegedly what little Danny is telling her is not an offense. It's not a defense to defamation, and it's actionable. Moreover, the statements that were made attributable to little Danny at trial are seriously suspect. As set forth in the record on appeal and the testimony given by mom, dad, Daniel Scandiff Jr., as well as Donna Scandiff, the grandmother, and Dan Scandiff Sr., the grandfather, the child had developmental disabilities. They couldn't communicate his thoughts. At age four, there was testimony that he couldn't communicate thoughts. Yet the defendant is attributing this child telling her that grandpa and himself got in a bath naked, that a flashlight was stuck up the grandpa's rear end, apparently, that grandpa slapped the child and said, bitch, I don't like you. There was also statements that the child allegedly told mom, who repeated the statements, that they had naked dance parties, that the child was hit with a hammer in the rear end, and that grandpa exposed himself. Now, this child had the inability to communicate such claims. And ironically or remarkably, these claims were only made to mom. Dad was never told, or the child never told dad any of these claims, nor did the child reveal any of these claims to anyone else other than mom. These are despicable, deviant claims that are per se defamatory. The testimony also revealed by Dan Scandiff Sr. I'm sorry, Jr., that in this manner, you eventually result in- Mr. Faulkner, you're a little bit all over the world here on some things. Let me focus and ask this question. You're going to determining whether it's defamatory, right, by these statements, whether the statements themselves are defamatory, is that correct? That's correct. Okay. Now, the details which you have presented of these statements, is that necessary? Or how about just saying abuse, physical abuse or sexual abuse without any details? Is that defamatory? The reason I indicated what I indicated is this is what she told her mom and her brother. And I don't want to soft pedal or suggest that the statements weren't so damning and deviant that it may be looked upon as not being per se. Plaintiff has maintained that these statements by the defendant are per se defamatory. My apologies for going into detail, but regrettably, these are things that she said. These are things she said to her mother and her brother. Respectfully, the mere utterance by the defendant to her mother and brothers is a publication. And so we can essentially stop now and respectfully overturn the trial court's decision because they are a publication. The court never held, never held that statements to mom and brothers was a privileged, a privileged statement. And of course, the court never went on to indicate what type of privilege and whether or not that privilege has been abused. The defendant would like this court to assume such statements are absolute privilege. And that's simply not the case. The defendant has also claimed that the statements by the husband that were made to him by the defendant, which she repeated in the presence of the husband to law enforcement individuals is an absolute privilege. And it's simply not. It may be waived. And at trial, we maintain that it was waived. The crux of this matter boils down to the statements that the defendant made, whether she repeated them or not, or made them up. Those are the family court and those are publication. And we would ask that the court reverse the trial court's decision. The facts of this case are no doubt troubling. The statements being made and attributable to mom, to the child against grandpa are damning. Mind you, there were three DCFS complaints that mom made at different times over the course of roughly eight months. Each one of those was deemed unfounded. And mom admitted telling the brothers and mom of the investigations. It's illogical to suggest that she didn't go into detail, but at a minimum, at a minimum, she admitted telling mom and brothers about the bathtub issue. She's also admitted in her answers to interrogatories, which is an issue that was somewhat challenged at trial, that these admissions in her answers, interrogatories two and three, in which she's admitted that she told her brothers that my client exposed himself to the child, and that the child was sexually abused, physically abused, molested, were told to mom and brothers. And as such, that is a publication. And those statements are not privileged. There's no basis for maintaining privilege. And the trial court never ruled on it. The trial court ruled that the statements were not a publication. So it's a fine line. It's a fine line that's definitive. The case law is crystal clear as to what is and isn't a publication. I'd like to offer the following as well. And I'm sure John will be presenting his argument. There is a contention that statements to the repeating statements of another aren't a punitory. Well, that's not the law anymore. It's not the law anymore. The defendant is also asking this appellate court to overrule this district court's decisions on defamation, every other district decisions on defamation, and at least three Illinois Supreme Court ruled decisions on defamation, holding that the defendant would have to believe the statement for it to be actionable. That's not the law in Illinois. It's not the law anywhere. The mere fact that she repeated these statements that our plaintiff maintains are per se defamatory results in an actual event against this defendant. And the mere fact that she repeated it yet again is itself defamatory. There's no privilege. Defendants also would like to impose privilege on these statements of mom and brothers. Cites no case authority that would recognize these types of statements to mom and brothers would be a privilege. And of course, what privilege would that be? Would that be absolute or conditional? And if it's conditional, it certainly wouldn't be absolute. That privilege can be waived by way of additional action. So, in essence, the appellant is asking this court to overturn Judge Neal Cerny's decision and demand this manner for a new trial on the witness. Judge, I can't hear you. Is that better? Yes, yes, thank you. Okay. You haven't addressed the case of court versus star mark. Which is that cited by the appellee? No. It's cited by you under standard of review, Mr. Thelander. Oh, I'm sorry. I'm sorry. Thank you. There is a two pronged approach to determining whether or not a directed finding should be issued. The first prong requires the trial. That's not what he asked. Yeah. We're talking about conditional privileges, aren't we? I was of the impression you were looking at or asking about jurisdiction. Conditional privilege, if I can address that. First, the court never ruled that the statements to mom and brothers were a privilege. Never ruled that. But if the court's going to take that up, the testimony that was established parenthetically, the defendant cites no cases, no cases whatsoever. Other than restatement second of torts. That a statement could be privileged. It's a conditional privilege. And then it could be waived by way of conduct and acts. First, the trial court never addressed the privilege and whether it was privileged. But to the extent this court is going to embrace the issue, there is ample testimony contained in the record that the motivations behind this defendant's statement was her animosity and displeasure with the relationship that her husband had with his parents. And that's evidenced by the testimony of Karen Graziano, which painfully went through a course of time in which the defendant shared with Karen her displeasure, anger, hatred, annoyance that Dan Jr. would talk to his parents. That his parents would stop by and drop off food. Or stop by and help Dan Jr. with home projects. There was a motivation behind this. That to the extent the court's going to consider a privilege, it's damned by way of what the defendant did. She sought to destroy the relationship by way of proffering and publishing terrible statements. Terrible statements. Against my client, the grandfather of, at the time, a four-year-old. A four-year-old who couldn't communicate well and certainly expressed his thoughts and ideas. Yet, according to the defendant, she's the only one that he told. And she was simply repeating. The evidence at trial reflects that this matter should be reversed. That a new trial should be awarded. And that the matter proceed accordingly. Any questions from the court? No questions. Judge, I'm sorry. I can't hear you. I cannot hear you, Bill. Something's going on. Okay. Can you hear now? A little bit. Barely, but yes. Okay. Well, you can hear well enough to know you'll have time in reply. And Mr. Polinsky. You can skip to C, Justice. I can skip to C. Very good. Thank you. That's as close as you get in English. Thank you. You're welcome. You may respond. Thank you. May it please the court, my name is John Polinsky. I represent Elizabeth Skandev. I apparently was at a different trial than Mr. Tholender was. As I recall the testimony from, and now that we're limited to the publications to Ms. Skandev's mother and brothers, the direct testimony from Ms. Skandev was that her brothers were advised that there was an investigation. She did not testify that she told them any of the details of the statements that her four-year-old son was making about his grandfather. In fact, the whole issue with regard to the interrogatories is a question of whether or not in answer to general interrogatories, which asks for broad categories of questions, she should somehow be stuck with an admission that she went into great detail with the people with whom she spoke. Mr. Polinsky, where's the line drawn? Where's the line drawn in terms of whether that's an admission? No. I mean, the interrogatory,  and then her testimony at trial. Well, I think the line is drawn with her direct testimony at trial because during the discovery process, what you're looking for is general categories of information. And then when he elicited, Mr. Tholender elicited direct testimony from the witness, my client, she told him specifically what she said to whom.  and then he sought to impeach her with interrogatory answers that were prevailed prepared during the course of discovery. And I think that even if that is an admission, it would be a, an evidentiary admission and the trial court in weighing that the testimony versus that admission is not bound by an evidentiary admission. The trial court is able to having seen the testimony of the witnesses to disregard that admission or to, to not be bound by it. And I believe, well, I don't have the citation for that for right now. What I, what I can tell the court is I don't, I don't believe that judge Cerny was absolutely required to say,  that's an admission that she said these specific things to these particular people. When Mr. Tholender had elicited from her on direct testimony, exactly what she had said to whom. I don't think it was even a proper impeachment. Well, let's stay away from the impeachment. I'm kind of curious. Where's the line drawn is a defamatory to say that allegations of abuse. Is that sufficient or do you have to go into these details? Well, I don't think you have to go into these details. I think I think we're the crux of my case. Mr. Justice is that the, these statements to everyone to whom she made them were privileged under the three, the analysis where she she's the mother of a young child. She, the child has an interest in being protected. She has an interest as her mother of protecting the child. The public in general has an interest in protecting children from potential abuse. And she, it's not as if she was running around to the entire world discussing this matter. She was talking to trusted people in law enforcement, her mother, the same kind of person. I would go to in, in seeking advice on, on how to raise my children. I'm sure the same type of person you would have gone to while raising your children. So you're basically citing to me, right? I am. I think it's a, I think it's a privilege. All three situations. And Q is correct. It's what your theory is. That is exactly what my theory is. And that's, and I cited as well for that purpose. I think that this is a situation where we have to allow people to communicate what they're hearing from young children of a tender age, because those kinds of comments from that child are concerning. Now, Mr. Thylender alluded to his not very well to a theory that, that this is somehow made up. It wasn't argued at, at court or trial that these statements were not uttered by young Danny. We had the testimony of the, the, the psychologist, Dr. Shapiro, who testified that he didn't think that necessarily that, that they were fabricated by Mrs. Scaniff, that he thought that the child may have made fanciful statements, but he didn't testify that they, these were made up. Does that fit in this analysis of defamation? I think it fits into the analysis because if you have a privilege under  you have to know that that privilege has been abused. Has she talked to somebody or does she actually know that it was in fact, not true?  Judge Cerny find on that issue. I'm not sure. Judge Cerny reached it all together that way as is often the case when,  when we don't, we don't have a finding as to that issue. I don't think he made an explicit finding. That's correct. And I will tell the court, did he even do an addressing of that issue? Not in his oral comments. That's correct. But, but that doesn't preclude an appellate court from affirming for reasons which appear of the record. Isn't that a fact issue? Whether or not, whether or not the privilege was abused. I think this court, I think this court can rule based on, based upon the testimony that it was not abused based because this case was not going to get any better. Had Elizabeth Scaniff taken a stand on her case in chief to say, this is what I told people. We all know what, what she told them. She told them what she heard from her son. A finding of no publication. He did.  and I will tell the court that there are many times where I read a transcript of a proceeding where I've been involved and I think,  I wish I sounded more articulate in writing than I did than I thought I did in orally. But I still think that the evidence in the, it shows up in the report of proceedings shows that she did not publish this in a way which would abuse a privilege. And I think this court can find as a matter of law that these communications were privileged. And then I think this court can find that based upon the testimony that privilege was not abused. And I don't think it has to go back to judge Cerny who unfortunately is no longer in that calendar. So we'd have to start over from scratch with a brand new judge. But that's neither here nor there. I don't think that should enter into the, this court's consideration. I think we have plain and simple, a privilege that attached and we have plain and simple, no abuse of it. She spoke to really now, apparently Mr. Fowler says it doesn't involve talking to the police, DCFS or law enforcement. It only involves talking to mom and brothers. And the clear testimony as to the brothers was gosh, they knew there was an investigation going on. I didn't go into detail. And as to mom, this is what little Danny said. And although Mr. Fowler has a theory that these statements were somehow fabricated by my client, there was no direct testimony that that, that happened. And,  and, and although Mr. Fowler has a theory that Danny could not have communicated these thoughts, there are two issues there. One is that the, the father of this child admitted that he could communicate with the, with the child. My client said that she could understand what this child said. And, and, and Mr.  even though he's attached it as an exhibit to his reply brief includes a pretrial statement that has a discovery disclosure that says that the father was, had videos plural of his discussions with little Danny, which weren't prepared, weren't proffered at trial. My suggestion there would be that's because those videos would have the suggestion that he can't communicate.  Mr. Polanski, if someone says and publishes a statement that you are under investigation for abuse of your grandchild, is that defamatory? Yeah, absolutely. Okay. I can see that what she said was a difficult thing for anyone to hear. I can see that there was a prima facie case. I'm just talking with the, as that statement, not all these details that you are both getting into.  fortunately I haven't had to repeat the details, but yes, I think I would agree that he's under investigation for abuse. Absolutely. That would be defamatory. Okay. Thank you. I really don't have anything to add except for, I think that the record clearly shows that there was, these were privileged communications and the privilege was not abused. It's not like she was running around town telling everybody she was talking to trusted family members, not in great detail as to two of the three and, and to her mother, as it related to the wellbeing of her son, Danny Jr. Or little Danny. Okay. Questions from the court. None. I don't have any. Okay. Thank you, Mr. Polanski. Okay. Thank you. Mr. Zolander, you may reply. Thank you, judge. Well, first of all, I would agree with Mr.  We apparently, we had two different trials, but the facts of the facts and the report, the proceedings clearly indicates what transpired. I'm glad to hear that. The Eppley, the defendant is acknowledging that a statement that you're under investigation by DCFS is defamatory. That she told her brothers that both brothers and she told their mother that. So there is by admission by the defendant of a defamatory statement. As to the contention that the videos respectfully, that is a red herring. Counsel served a two 37 notice during the course of the trial that I never saw. In which he asked for the production of those videos. He had them, he had them and I don't need to produce them. I don't need to use them because the testimony is crystal clear. And if counsel wanted that, those videos he had them, or he could have raised an issue at the trial level. He never did. That issue is way. There's a contention that the court should embrace the, the privilege. Judge Cerny never dealt with the privilege. And that's a question of fact.  and judge Olden bridge, you've identified that. And that's a bullseye quick indicates that. That it's a question of fact as to whether the privilege, a privilege has been abused. And judge Cerny never ruled on that. And he never ruled on, on the issue in essence of whether or not the, a false statement to DCFS, to investigators, to village, a little park police department would be still privileged. And it wouldn't be. But yet again, That's a factual issue that needs to be addressed by the trial court. And respectfully, not by this court. Because it's a factual issue. I don't have a theory of it. I know the facts. And the facts are that mom made these statements. Mom attributes them to little Danny, a four-year-old, but that's not a defense. Repeating statements, repeating statements to her mother, and then telling her brothers that, that Dan scanned of senior, the grandfather's under investigation, hits a bullseye in this case for plaintiffs. And that this matter needs to be reversed. The judge again, judge Cerny never dealt with the issue of the statements made to mom and brothers, other than what's on publication. And we know respectfully, it's simply wrong. It's simply wrong. The utterance is enough. Respectfully, there is no privilege here, but to the extent the court is, is concerned or, or needs to, or desires to address that issue that compels matter to be reversed and sent back to the trial court. And regrettably, we start all over at a trial, but that's what, that's why we're here. And that's why there's a public court in the Supreme court. So that matters can be addressed fully and completely. Clear understanding of what transpired and that the respective rights of litigants are protected. One other item. Defendant wants to portray the statements in the interactory interactory is two and three as well. Maybe they're admission, but they're not binding. That is simply not the law. As set forth in Kovac versus Baron, a case that, that cited in the brief statements, answers to discover our judicial admission. So her answers, Interactory two and her answer to interact three, three are judicial admission of the matter of law. And both interact with, he's asked, did you make these statements into home? And she acknowledged that. And so we have a clear situation where there has been the family statement on an aside, powerful as admitted that the mirror statement under investigation is sufficient, which would warrant the support to return the matter of the trial level or for return. Respectfully. I thank the court for hearing my arguments and entertaining my thoughts. Questions from the court.  Okay. Well, thank you counsel both for your arguments in this matter this morning, it will be taken under advisement or written disposition shall issue.